UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| ULTIMO GLOBAL HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:22-cv-01578-JPH-MG |
| | ) | |
| SCOTT NEWCOMER and | ) | |
| AMY NEWCOMER, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION
## ON MOTION TO ENFORCE SETTLEMENT AGREEMENT

Pending before the Court is Defendants Scott and Amy Newcomer's (the "Newcomers")
Motion to Enforce Settlement Agreement. [Filing No. 38; Filing No. 39.] Plaintiff Ultimo Global
Holdings, LLC ("Ultimo") has opposed the Motion, [Filing No. 42]. The motion is now ripe for
ruling.

The Court referred this matter to the undersigned Magistrate Judge for a report and
recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 41].
For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT in part**
Defendants' Motion as set forth below.

## I.
### BACKGROUND

This action began on July 5, 2022, when Plaintiff commenced this civil action, alleging
breach of contract. [Filing No. 1.] The Newcomers removed this action on August 9, 2022, [Filing
No. 1], and filed a motion to dismiss for lack of proper venue and jurisdiction, or alternatively, to
transfer venue, on August 16, 2022, [Filing No. 10]. On November 24, 2022, the Court set this

matter for an in-person settlement conference, [Filing No. 24], and the parties appeared as ordered on December 22, 2022 before the undersigned Magistrate Judge.

During the conference, the parties reached an agreement on the terms of the settlement, (the "Terms Sheet"). [Filing No. 39-1.] The undersigned read the Terms Sheet into the record and asked the parties and their respective counsel to: 1) confirm on the record the accuracy of the terms of the settlement, and 2) confirm the parties had entered into a binding settlement agreement. [Filing No. 35.] The following morning, the undersigned sent counsel a PDF copy of the Terms Sheet that was read into the record. [Filing No. 39-1.]

Following the settlement conference, counsel for the Newcomers drafted and sent to counsel for Ultimo a settlement agreement and release. [Filing No. 39-2.] On January 9, 2023, Ultimo responded with suggested revisions. [Filing No. 39-3.] Counsel for Newcomers responded that same day. [Filing No. 39-4.] On January 12, 2023, counsel for the respective parties conferred about the settlement agreement, but no resolution occurred. At Ultimo's request, the undersigned conducted a telephonic status conference on January 18, 2023. [Filing No. 33.] The undersigned issued a minute entry the same day ordering the parties to "meet and confer on the remaining disputes over settlement and release agreement language, bearing in mind the substantive matters were put on the record and agreed upon by the parties at the conclusion of the settlement conference." [Filing No. 34.]

On January 18, 2023, counsel for the Newcomers sent a revised copy of the settlement agreement and release. [Filing No. 39-5.] Counsel for the parties met and conferred on January 20, 2023. Ultimo's counsel stated he would recommend that his client sign the settlement agreement and release the parties agreed upon at meet and confer on January 20, 2023. [Filing No. 39-6.]

On January 23, 2023, John Maley entered his appearance on behalf of Ultimo, [Filing No. 37], and sent an email to counsel for the Newcomers, advising that there has been no meeting of the minds on the material terms and sent proposed changes. [Filing No. 39-7.] Counsel for Newcomers responded that same day, [Filing No. 39-8], and counsel for Ultimo sent a reply on January 26, 2023, [Filing No. 39-9].

The Newcomers filed the instant Motion to Enforce Settlement Agreement, [Filing No. 38], in which they ask the Court to enter judgement enforcing the settlement reached on the record at the December 22, 2022 settlement conference.

## II.
### STANDARD OF LAW

"[A] district court has the inherent authority to summarily enforce a settlement agreement." *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004). A settlement agreement in a federal case is "just like any other contract." *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007). A settlement agreement is a contract that is enforceable under ordinary state law contract principles. *Lynch, Inc. v. SamataMason Inc.,* 279 F.3d 487, 490 (7th Cir. 2002).

"A party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement insufficient" or otherwise changes his mind. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454 (7th Cir. 1986). "Indiana strongly favors settlement agreements," and "if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement." *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003).

## III.
### DISCUSSION

The Newcomers ask the Court to enforce the Terms Sheet entered into the record on December 22, 2022, as well as their subsequent settlement agreement draft as written on January 20, 2023, which they argue is the most accurate representation of the Terms Sheet. [*See generally* Filing No. 39; Fling No. 39-6.] Ultimo argues that the Terms Sheet reached at the settlement conference could not have been final because there were additional material terms added to the parties' subsequent writings that the parties did not agree to during settlement, and various terms of the Terms Sheet are indefinite, as evidenced by the parties' contentious exchange of written drafts. [Filing No. 42 at 5.]

The main issues presented by the motion are (1) whether an agreement exists on the material terms from the Terms Sheet entered into the record on December 22, 2022; (2) whether this Terms Sheet is enforceable; and (3) whether this court can—or should—enforce either of the parties' subsequent writings. *See, e.g., Smith v. Peterson*, No. 1-19-CV-04671-SEB-TAB, 2020 U.S. Dist. LEXIS 212415, 2020 WL 6701284, at *2 (S.D. Ind. Nov. 10, 2020) ("A federal court's authority over a case pending before it includes authority to enforce a settlement agreement that the parties have executed but not satisfied. A court must first determine as a matter of law whether an agreement exists. The court must then determine, as a matter of discretion, whether the agreement should be enforced." (Internal citations and quotation marks omitted)).

### A.      Whether the Terms Sheet is an Enforceable Agreement

As a preliminary measure, Indiana law governs in determining the elements of contract formation, and under Indiana contract law, an "offer, acceptance, plus consideration make up the basis for a contract." *Zimmerman v. McColley*, 826 N.E.2d 71, 76 (Ind. Ct. App. 2005); *Dillard*, 483 F.3d at 506, 507; *Sims-Madison*, 379 F.3d at 448.

Under Indiana law, a contract is not formed absent "[a] meeting of the minds of the contracting parties, having the same intent." *Zimmerman*, 826 N.E.2d at 77. To determine whether a contract is enforceable, there are two interrelated areas that must be considered: "intent to be bound and definiteness of term." *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind. 1996). Further, Indiana law finds that an oral agreement to settle a lawsuit is generally enforceable. *See, e.g., Zimmerman* (enforcing oral settlement agreement regarding an automobile accident).

The "meeting of the minds" element requires that contracting parties reach agreement or a "meeting of the minds" on all essential terms. *Fiederlein v. Boutselis*, 952 N.E.2d 847, 856 (Ind. Ct. App. 2011) (emphasis added); s*ee also Jetz Service Co. v. Ventures*, 165 N.E.3d 990, 995 (Ind. Ct. App. 2021) (a meeting of the minds requires reasonable certainty regarding the "essential terms" of the contract). "[O]nly essential terms need be included in order to render a contract enforceable." *Wolvos*, 668 N.E.2d at 676. Courts routinely conclude that settlement agreements are enforceable when they include material terms of payment for dismissal of the suit. *See Elustra v. Mineo*, 595 F.3d 699, 709 (7th Cir. 2010) ("We find that the material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit."); *see also Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016) (agreement was enforceable because it sufficiently defines the parties' intentions and obligations, namely that plaintiff would voluntarily dismiss her claim if the defendant paid her $210,000).

The Seventh Circuit has counseled "that the relevant inquiry is whether the agreement at issue is sufficiently clear regarding its material terms, not whether the agreement was captured in writing." *Beverly*, 817 F.3d at 334; s*ee also Elustra*, 595 F.3d at 709 (affirming enforcement of preliminary oral agreement and finding that the "material terms were definite and certain: defendants would pay $6,000 to the Elustras in exchange for their dismissal of the lawsuit.").

Moreover, because "[t]he parties to a contract have the right to define their mutual rights and obligations … a court may not make a new contract for the parties or supply missing terms under the guise of construing a contract." *Ochoa,* 641 N.E.2d at 1044. Determining whether there has been a meeting of the minds "is a factual matter to be determined from all the circumstances," and the Court should refer "not to the parties' subjective intents but their outward manifestation of it." *Zimmerman,* 826 N.E.2d at 77.

At the conclusion of the December 22, 2022 settlement conference, the parties entered the following terms into the record:

1. Assuming all calendar year 2022 gross revenue for ATI[1] is $1.5MM or less, Scott and Amy Newcomer shall pay Ultimo greater of 20% of the net sale proceeds from asset or equity sale of All American within 3 years or $620K, which shall be paid no more than 30 months from effective date of the settlement Agreement.

2. No later than 1/31/2023, Scott and Amy Newcomer shall provide financial statements as kept in the ordinary course of their business and data available on All American's accounting software for period of Q4 2020 through (sic) Q42022. Newcomers shall identify any payments made during the period to themselves, family members, or companies owned by them. Newcomers agree to respond to reasonable inquiries about the financial statements and accounting software data (sic).

3. All American shall pay $150K in current and past distributions owed to Ultimo for Q4 2020-Q$2022, payable $15K by 1/31/2023 and balance of $135K by 6/1/2023.

   If however, the financial statements and accounting software data shows greater than a 10% discrepancies in distributions owed for that period, then All American shall remit that difference less any payments previously made by 6/1/2023.

4. Mutual releases of all claims, past, present future, asserted not asserted, known and unknown and all defenses between the parties, including not limited to

---

[1] The Court mistakenly wrote "ATI" in place of "All American," however the recording of the dictated terms at the December 22, 2022, settlement conference confirms the Court's reading of "All American".

Ultimo, All American, Newcomers, Nathan Thornberry, and any entity owned or controlled by them,

5. Newcomers warrant and agree not to engage in any self-competition against All American until the entire terms of the settlement have been completed.

6. No contingencies to the agreement.

7. Newcomers agree to provide docs sufficient to verify the net proceeds of the company concurrent with the payment of any sale proceeds described in paragraph one.

8. Ultimo shall convey relinquish and waive the entirety of its ownership interest in the company in the settlement agreement itself and shall cooperate to execute any docs necessary to immediately convey its equity interest and shares in All American to the Newcomers.

9. The parties shall dismiss the pending action with prejudice within 7 calendar days within execution of the agreement.

10. Time is of the essence in drafting and executing the agreement.

11. Any dispute arising out of or relating to the settlement agreement shall be governed by the laws of the State of Indiana. The parties agree the District Court for the Southern District of Indiana shall be exclusive venue for resolving any dispute arising out of or relating to the settlement.

12. The parties are responsible for their own attorneys fees and costs.

[Filing No. 39-1.]

In reviewing the record, the undersigned finds that a binding settlement agreement was formed at the conclusion of the settlement conference. The parties and their counsel, albeit excluding Plaintiff's newly appeared counsel John Maley, appeared in-person before the undersigned Magistrate Judge. The parties and respective counsel in attendance appeared with authority to bind the parties to any settlement agreement that was reached. The undersigned discussed the material terms with counsel, reading the Terms Sheet into the record and asking the parties and their respective counsel to confirm on the record the accuracy of the terms of the settlement, and the fact the parties had entered a binding settlement, detailed in the transcript from

conference, and as found in Defendants' Exhibit 1. [Filing No. 35; Filing No. 39-1.] Further, the undersigned reiterated at a status conference on January 18, 2023, that "the substantive matters were put on the record and agreed upon by the parties at the conclusion of the settlement conference." [Filing No. 34.]

The undersigned **RECOMMENDS** that the Court find that the undisputed record shows that all elements for a valid oral agreement existed when the parties entered the Terms Sheet into the record to settle the case on December 22, 2022.

### B.    Enforcement of Subsequent Writings and Additional Terms

To the extent the parties now seek enforcement of their respective draft agreements, their recitations of the agreement reached during the settlement conference certainly differ. [*Compare* Filing No. 39-6; Filing No. 39-9.*]*

Whether the parties intended to execute a subsequent written document is relevant to the determination of their intent to be bound. *Illiana Surgery & Medical Center, LLC. V. STG Funding, Inc.*, 824 N.E.2d 388, 394 (Ind. Ct. App. 2005). Parties may make an enforceable contract which obligates them to execute a subsequent final written agreement. *Wolvos*, 668 N.E.2d at 674. However, it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated in the document. *Id.* In other words, the document is understood to be a mere memorial of the agreement already reached and may not contain a material term that is not already agreed on. *Id.* The "anticipation of a more formal future writing does not nullify an otherwise binding agreement." *Beverly*, 817 F.3d at 334 (internal quotations omitted).

As noted above, the undersigned recognized the parties' intentions to draft and execute a subsequent written agreement. But, while the parties contemplated the execution of a subsequent written version of the Terms Sheet, the parties have presented no evidence that their settlement

agreement was conditioned upon acceptance of this subsequent written version and certainly does not nullify the Terms Sheet as a binding agreement. *See* *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir. 1986).

While the parties' subsequent "negotiations" clearly attempted to propose additional language to the Terms Sheet, these additions doom the parties' efforts to enforce their draft settlement agreements if such language concerns *material* terms. *See* *Janky v. Batistatos*, 559 F. Supp. 2d 923, 930 (N.D. Ind. 2008) (where an offer to settle was followed by a written mutual global release draft that added additional and material terms, the court held the offer to settle unenforceable); *MH Equity Managing Member, LLC v. Sands*, 938 N.E.2d 750, 757 n.2 (Ind. Ct. App. 2010) (distinguishing *Janky*); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 2004 WL 906118, at *4 (N.D. Ill. Apr. 28, 2004) ("If Steadfast wanted a confidentiality clause, it should have made it known during the negotiations.").

An unresolved *immaterial* term, however, does not prevent the formation of a binding contract. *See* *Beverly,* 817 F.3d at 335-36 (finding indemnification, cooperation, and future employment issues not material and enforcing handwritten settlement agreement between employer and employee) (applying Illinois law); *Dillard*, 483 F.3d at 508 ("Terms addressing purely contingent matters are not necessarily material.") (applying Illinois law); *Higbee v. Sentry Ins. Co.*, 253 F.3d 994, 997 (7th Cir. 2001) ("lack of agreement on minor, immaterial terms . . . do not preclude a finding that a contract has been formed") (applying Illinois law). The mere fact that parties disagree on whether to include a certain provision in their written agreement does not make the issue material. *See* *Dillard*, 483 F.3d at 508 ("The materiality of additional written terms introduced after an . . . agreement is reached is not established simply by one party's intransigence or 'refusal to budge' on the new terms.").

Both parties face an initial problem for enforcement of their additional language to the terms entered into the record, as nowhere in the settlement conference did the parties reference their intent for additional language on any material term or contemplate that these terms were not sufficiently definite for enforcement. However, from the Court's review, the additional language does not add new material terms, but merely builds upon the terms read into the record. It does not appear that these added conditions, representations, and other requirements implicate the heart of the parties' settlement in a material fashion.

### 1.    Additional Language to the Terms Sheet

The terms regarding payment are sufficiently definite and certain regarding the parties' intentions and obligations for either the net sale proceeds from an asset or equity sale of All America within three years, or a lump sum of $620,000 to be paid within 30 months of the effective date. Further, the parties contemplated payment of current and past distributions in the amount of $150,000, with an additional difference should any financial statements and accounting software data show a greater than 10% discrepancy in distributions owed for the period of Q4 2020-Q4 2022. Any additional language is immaterial. Any delay in response to reasonable inquiries and disputes regarding sufficiency of the documents provided to verify net proceeds from the sale of All American can be sufficiently handled under the dispute resolution clause as contemplated by the parties.

Although the agreement in this case primarily contemplated that Newcomers would either sell a business or pay a sum of money owed in exchange for relinquishing Ultimo's ownership interest in All-American, the self-competition agreement by Newcomers is a significant part of the total package, as noted by both parties. While the Terms Sheet lacks a geographic area and specific services or programs the Newcomers would be prohibited from competing with for the term, this

is not fatal in this instance. The parties provided no questions on the record that they were unclear on the definition of "self-competition", and neither party argues that they lacked the ability to discuss such additions to the terms at the conference. Further, Ultimo has intimate knowledge of the Newcomers business services, evidenced by their ownership interest in the company of All American, along with the geographic area encompassed by their services. As such, any dispute on whether the Newcomers are engaging in self-competition against All American in violation of the terms of the agreement can similarly be handled under the dispute resolution clause as contemplated by the parties.

The reading of the Terms Sheet shows that the parties had a meeting of the minds concerning a potential release of any other claims other than those already in the case and those which could possibly be asserted by releasing unspecified claims by non-parties, that are owned or controlled by the parties to this case. [Filing No. 35.] The parties took care to specify and define this provision to encompass the parties and does not extend to other entities, beyond those owned or controlled by them.

Lastly, the Court has observed on multiple occasions, including during its January 18, 2023 status conference, that the parties agreed to a no fee-shifting provision and that they were responsible for their own costs associated with this litigation. [Filing No. 34.] Any additional language regarding this term goes beyond the Terms Sheet contemplated and agreed upon by the parties.

As such, the undersigned **RECOMMENDS** the Court find the additional language to the material terms unenforceable and immaterial to settlement.

**2.      Additional Terms Beyond the Terms Sheet**

Reviewing the record, the proposed draft settlement agreements contain additional paragraphs that were not contemplated in the Terms Sheet. It can be argued that these additional terms never discussed at the settlement conference are standard terms of settlement, which are unnecessary for enforcement of the settlement agreement. Such terms cannot be considered part of the settlement if they were never discussed with the opposing party. *See, e.g., Higbee,* 253 F.3d at 998 ("Although a contract can be formed even though the precise language is not worked out and put into writing until sometime later, there must at least be some agreement as to what it will say." (Internal citation omitted)). *Cf. Beverly,* 817 F.3d at 334 ("A settlement agreement may be enforceable despite the omission of certain terms so long as those terms are not material.")

From the Court's review, the paragraphs beyond those contemplated in the Terms Sheet contained in both proposed draft agreements are immaterial and unnecessary terms to settlement. The undersigned **RECOMMENDS** the Court find these proposed paragraphs unenforceable and immaterial to settlement.

### III.
### CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** the District Court **GRANT in part** the Defendants' Motion to Enforce Settlement Agreement, [38]. If this Report and Recommendation is adopted, the undersigned **RECOMMENDS** that the District Court declare

that the Terms Sheet entered into the record on December 22, 2022 were entered into knowingly and voluntarily, are sufficiently definite, and fully enforceable. Further, the undersigned **RECOMMENDS** that the District Court declare that the parties' subsequent writings are unenforceable and immaterial to settlement.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/18/2023

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**

13